UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REIS, INC. and REIS SERVICES, LLC,

                    Plaintiffs,

        - against -

SPRING11 LLC,

                    Defendant.

```
┌─────────────────────────────────┐
│ USDC SDNY                       │
│ DOCUMENT                        │
│ ELECTRONICALLY FILED            │
│ DOC #: _____          │
│ DATE FILED:  9/26/16            │
└─────────────────────────────────┘
```

**MEMORANDUM
OPINION & ORDER**

15 Civ. 2836 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

         Plaintiffs Reis, Inc. and Reis Services, LLC operate and sell access to a database containing information and analysis related to commercial real estate. Plaintiffs contend that Defendant Spring11 LLC – a real estate consultant – accessed the database without authorization and downloaded proprietary reports worth hundreds of thousands of dollars. The Amended Complaint alleges infringement claims under the Copyright Act, violations of the Computer Fraud and Abuse Act, and New York state law claims for conversion, misappropriation, common law fraud, breach of contract, unjust enrichment, and quantum meruit. (Dkt. No. 18)

         Defendant has moved to strike certain allegations in the Amended Complaint pursuant to Fed. R. Civ. P. 12(f), and to dismiss Plaintiffs' remaining claims pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b). (Dkt. No. 21)

## BACKGROUND

### I.    FACTS

#### A.    The Parties

         Plaintiff Reis, Inc. offers access to commercial real estate information through a subsidiary, Plaintiff Reis Services, LLC. (Am. Cmplt. (Dkt. No. 18) at ¶¶ 17-18) Plaintiffs operate a database (the "Reis Database") that houses proprietary information and analysis

concerning commercial real estate.  (Id. at ¶¶ 26-28)  Plaintiffs devote significant time and resources to maintaining and updating the Reis Database.  (Id. at ¶ 29)  Those wishing to obtain access to the Reis Database must either pay for individual articles or reports or purchase a subscription to the Database.  (Id. at ¶¶ 30-33)  Under either option, a user is subject to a license agreement that incorporates the Reis Terms of Service.  (Id. at ¶ 30)

Where a company, partnership, or other entity purchases a subscription to the Reis Database, a specified number of individuals within that entity may be issued individual log-in credentials through which they can access the Reis Database.  (Id. at ¶ 33)  The license provided by the subscription is non-transferable, and the Reis Terms of Service prohibit users from sharing data and reports with non-licensees.  (Id. at ¶ 38)

Reis's Terms of Service appear on the sign-in page of the Reis Database under the heading "LEGAL."  (Id. at ¶ 41)  Plaintiffs allege that this heading "put[s] users on notice that their access and use of the Reis Database are subject to the Terms of Service" and that use of the Reis Database constitutes acceptance of those terms.  (Id. at ¶ 39, 41)  The Terms of Service prohibit "authorized users" from sharing log-in information, using the Reis Database for the benefit of non-subscribers, or "acting 'in such a manner' as to deprive Reis of a 'loss of a potential sale or subscription.'"  (Id. at ¶¶ 35, 39)

Defendant Spring11 provides commercial real estate consulting, advisory, underwriting, and due diligence services to investors and banks.  (Id. at ¶¶ 21, 42)  It has never been licensed to use the Reis Database.  (Id. at ¶ 46)

2

## B.     Spring11's Use of the Reis Database

### 1.     The 38. IP Address

From about November 2013 to February 2014, users accessed the Reis Database from an Internet Protocol address ("IP address") assigned to Spring11 (38.88.190.194 ("38. IP Address")) and downloaded "numerous" reports, worth $91,530. (Id. at ¶¶ 48, 57)  Between November 4, 2013 and February 6, 2014, these users accessed the Reis Database via log-in credentials belonging to Reis subscriber JPMorgan Chase, and on February 7, 2014, access was obtained via credentials belonging to Reis subscriber Situs Holdings, LLC. (Id. at ¶¶ 49-50)  In February 2014, Reis discovered this unauthorized usage and confronted Spring11.  Spring11 promised that it would stop accessing the Reis Database. (Id. at ¶ 58)  At that point, "access to the Reis Database from the 38. IP Address ceased." (Id.)

### 2.     The 208. IP Address

Between August 2012 and February 2014, Spring11 – using a different IP Address (208.105.2.62 ("208. IP Address")) – improperly accessed the Reis Database and downloaded reports worth approximately $251,156. (Id. at ¶¶ 59, 64)  The 208. IP Address is registered to a commercial ISP provider, and its location is masked. (Id. at ¶¶ 59-60)  Based on "similarities in usage" between the 208. IP Address and the 38. IP Address registered to Spring11, Plaintiffs allege that the 208. IP address belongs to Spring11. (Id. at ¶ 61)

On February 4, 2014, for example, users traced to the 208. IP Address used the the same Situs Holdings, LLC credentials that were traced to the 38. IP Address on February 7, 2014. (Id. at ¶ 62)  The users from these two IP addresses also accessed reports concerning the same geographic area in Wisconsin. (Id. at ¶ 63)  "[O]ther properties, including those in

3

Pennsylvania, Nevada, Texas and elsewhere, were searched using both the 38. IP and the 208. IP addresses at about the same times." (Id.)

### 3.   Reis Credentials Issued to Arbor

In June 2015 – after this action had been filed – Arbor National Commercial Mortgage LLC ("Arbor"), a Reis subscriber, requested that Reis issue log-in credentials for Derek Grabowski, Echo Wu, and Micah Springston, all of whom had Arbor email addresses but were actually Spring11 employees. (Id. at ¶¶ 75, 77) Reis issued the credentials as requested, and Springston accessed the Reis Database and downloaded seven Reis reports containing copyrighted material. (Id. at ¶¶ 76, 79)

Plaintiffs informed Arbor that obtaining log-in credentials for individuals not employed by Arbor violated the Reis Subscriber Agreement. Arbor "apologized" and "explained that it had retained Spring11 to provide certain services to it and that Spring11 had asked Arbor to obtain Reis user credentials for these three people using Arbor email addresses for them." (Id. at ¶ 78) On July 2, 2015, Reis sent a letter to Spring11 "reiterating that under no circumstances was Spring11 allowed to access or use Reis data or reports regardless of the source unless and until the current dispute is resolved and Spring11 becomes a licensed Reis user." (Id. at ¶ 80)

### 4.   Reis Credentials Issued to Justin Kosmides

Plaintiffs also allege that Spring11 accessed and copied 539 Reis reports – valued at $173,552 – using log-in credentials issued in the name of Justin Kosmides. (Id. at ¶ 81) Although Kosmides' credentials were issued pursuant to Barclays Capital's Reis subscription, Plaintiffs allege that Kosmides was a Spring11 employee or agent and was not employed by Barclays Capital. (Id. at ¶¶ 81, 86-87) Between August 2012 and October 2012, someone using the Kosmides credentials and the 208. IP Address downloaded at least fifteen reports from the

4

Reis Database. (Id. at ¶ 83-85) Between August 2012 and July 30, 2015, the Kosmides credentials and an IP Address registered to Barclays Capital were used to access the Reis Database. (Id. at ¶¶ 82, 85) Plaintiffs allege that portions of the Reis Reports that were downloaded in 2015 are covered by registered copyrights. (Id. at ¶ 91)

## II. PROCEDURAL HISTORY

This action was filed on April 13, 2015. (Dkt. No. 1) The Amended Complaint was filed on August 10, 2015, and pleads claims for copyright infringement, contributory infringement, and vicarious infringement under the Copyright Act; violations of the Computer Fraud and Abuse Act; and state law claims for conversion, theft, misappropriation, common law fraud, breach of contract, unjust enrichment, and quantum meruit. (Am. Cmplt. (Dkt. No. 18) ¶¶ 95-215)

Defendant has now moved to strike those portions of the Amended Complaint that reference Justin Kosmides, and to dismiss Plaintiffs' remaining claims pursuant to Rules 12(b)(6) and 9(b). (Dkt. No. 21)

### DISCUSSION

## I. LEGAL STANDARDS

### A. Motion to Strike

Fed. R. Civ. P. 12(f) states that "[t]he court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). Under Rule 12(f), a court may strike a pleading ""when it appears beyond peradventure that it is a sham and false and that its allegations are devoid of factual basis."" Weiss v. La Suisse, 131 F. Supp. 2d 446, 450 (S.D.N.Y. 2001) (quoting Salzmann v. Prudential Securities, Inc., No. 91 Civ. 4253 (KTD), 1994 WL 191855, at *13 (S.D.N.Y. 1994)).

"Motions to strike are not favored, and in order '[t]o have redundant, immaterial or impertinent matters stricken from a pleading, the [movant] must demonstrate that no evidence in support of the allegation would be admissible, that the allegations have no bearing on the issues in the case, and that to permit the allegations to stand would result in prejudice to the movant.'" IMG Fragrance Brands, LLC v. Houbigant, Inc., No. 09 Civ. 3655(LAP), 2009 WL 5088750, at *1 (S.D.N.Y. Dec. 18, 2009) (quoting Metrokane, Inc. v. The Wine Enthusiast, 160 F. Supp. 2d 633, 641-42 (S.D.N.Y.2001) ("[M]otions to strike are disfavored and usually granted only for scandalous material.")); see also Wohl v. Blair & Co., 50 F.R.D. 89, 91 (S.D.N.Y. 1970) ("Such motions are not viewed favorably, the general policy being against denying a party the opportunity to support his contention in more depth at trial.").

The Second Circuit has cautioned that the power to strike should be used sparingly, and that "courts should not tamper with the pleadings unless there is a strong reason for so doing." Lipsky v. Com. United Corp., 551 F.2d 887, 893 (2d Cir. 1976) ("[O]rdinarily neither a district court nor an appellate court should decide to strike a portion of the complaint on the grounds that the material could not possibly be relevant on the sterile field of the pleadings alone."). "[T]he mere claim that an allegation may be false is insufficient to strike the offending content." IMG Fragrance Brands, LLC, 2009 WL 5088750, at *2.

### B.   Rule 12(b)(6) Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing

6

Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)),

and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v.

Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

   A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of

'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and

does not provide factual allegations sufficient "to give the defendant fair notice of what the claim

is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.,

507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).

   "In considering a motion to dismiss for failure to state a claim pursuant to Rule

12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to

the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco

v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner,

Inc., 282 F.3d 147, 153 (2d Cir. 2002); Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir.

1999)). Additionally, "[w]here a document is not incorporated by reference, the court may

never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby

rendering the document 'integral' to the complaint." Id. (quoting Mangiafico v. Blumenthal, 471

F.3d 391, 398 (2d Cir. 2006)).

## II.     MOTION TO STRIKE[1]

### A.     The Parties' Contentions

Spring11 has moved pursuant to Rule 12(f) to strike all of the Amended
Complaint's allegations referencing Justin Kosmides. Spring11 argues that all of Plaintiffs'
allegations concerning Kosmides are "blatantly false," because Kosmides is not actually
employed by or professionally affiliated with Spring11. (Def. Br. (Dkt. No. 22) at 12-13[2]) In
support of its motion, Spring11 has submitted declarations from its chief financial officer, and
from Kosmides, stating that Kosmides has "never worked for or been professionally affiliated
with Spring11 as an employee, independent contractor, or other agent." (Kapadia Decl. (Dkt.
No. 23) at ¶ 5; Kosmides Decl. (Dkt. No. 24) at ¶ 4)

In response, Plaintiffs argue that Spring11 is not permitted to introduce
declarations in support of its Rule 12(f) motion. (Pltf. Br. (Dkt. No. 26) at 12-15) In the event
that this Court elects to consider material outside the Amended Complaint, however, Plaintiffs
proffer three declarations that Plaintiffs claim create a factual dispute as to whether Kosmides
was "affiliated" with Spring11. (Id. at 14-16) David Bayne, Reis's outside counsel, states that
Spring11's former attorneys identified Kosmides as a Spring11 employee. (Bayne Decl. (Dkt.
No. 27) ¶¶ 1, 4-6) Jake Tuohy – who is Manager, Intellectual Property, at Reis, Inc. – states that
Reis log-in credentials issued to Kosmides were traced to the 208. IP address assigned to
Spring11. (Tuohy Decl. (Dkt. No. 28) ¶¶ 1-3) Tuohy also states that, on August 4, 2015, he

---

[1] Spring11 has not complied with Rule 12(f)(2)'s requirement that a motion to strike be filed
"'within 21 days after being served with the pleading [containing the objectionable allegations]."
Fed. R. Civ. P. 12(f)(2). "A court, in its discretion, may consider what would otherwise be [an]
untimely [Rule 12(f) motion[]," however, see IMG Fragrance Brands, LLC, 2009 WL 5088750,
at *1, and this Court has chosen to exercise that discretion here.

[2] The page numbers of documents referenced in this Order correspond to the page numbers
designated by this District's Electronic Case Filing system.

8

called Spring11's New York City office and asked for Mr. Kosmides. The receptionist told

Tuohy that, although Kosmides did not work in that office, he did work for Spring11. (Id. at ¶ 5)

Greg Williams, who is Vice President – Product Development and Intellectual Property at Reis,

Inc. – reports that he found Justin Kosmides' public Facebook profile, and that it discloses that

Kosmides is a Facebook "friend" of Jack Fuchs, a Spring11 principal. (Williams Decl. (Dkt. No.

29) ¶¶ 1, 3)  Williams also states that he found a public Instagram profile with the user ID

"@jgfuchs"; the individual with this user ID was one of "28 people who 'liked' an Instagram

photo Justin Kosmides (user ID @kosmides) [had] uploaded to his Instagram account." (Id. at ¶

4)

## B.   Analysis

"[T]he general rule is that on a motion under Rule 12(f) the Court will not

consider matters outside the pleadings." Lopez v. Resort Airlines, 18 F.R.D. 37, 40 (S.D.N.Y.

1955); see also Castro v. Covenant Aviation Sec., LLC, No. 12 Civ. 3037(PAC)(KNF), 2013

WL 3070319, at *5 (S.D.N.Y. May 7, 2013), report and recommendation adopted, 2013 WL

3811474 (S.D.N.Y. July 22, 2013) ("In deciding a motion to strike, a court will not consider

matters outside the pleadings. . . ."); Corley v. Jahr, No. 11 Civ. 9044(RJS)(KNF), 2012 WL

4888303, at *2 (S.D.N.Y. Oct. 4, 2012), report and recommendation adopted, 2-12 WL 6187076

(S.D.N.Y. Dec. 12, 2012) ("[A]ffidavits may not be used on motions to strike." (citation

omitted)); Wine Markets Int'l, Inc. v. Bass, 177 F.R.D. 128, 134 (E.D.N.Y. Jan. 23, 1998)

("Since it is generally improper to consider matters outside the pleadings in ruling upon a motion

to strike, the Court will not consider any evidentiary submission filed by any party." (internal

citation omitted)); Wohl, 50 F.R.D. at 90 ("In ruling upon a motion to strike we view the

pleading under attack most favorably to the pleader, and preclude resort to extraneous matter. . .

." (citation omitted)). "'If matters outside the pleadings are presented and considered [in the context of a Rule 12(f) motion,] the motion shall be treated as a motion for partial summary judgment and the responding party should have an opportunity to conduct discovery and present evidence in opposition to the motion. . . .'" Index Fund, Inc. v. Hagopian, 107 F.R.D. 95, 100 (S.D.N.Y. 1985) (quoting U.S. Oil Co. v. Koch Refining Co., 518 F. Supp. 957, 959 (E.D. Wis. 1981)).

While Spring11 argues that courts have sometimes considered material outside the pleadings in ruling on Rule 12(f) motions (see Def. Reply Br. (Dkt. No. 25) at 6), Defendant has cited only one case from this District in which a motion to strike has been granted on the basis of material outside the pleadings. (See id. (citing Salzmann v. Prudential Securities, Inc., No. 91 Civ. 4253 (KTD), 1994 WL 191855, at *12-13 (S.D.N.Y. May 16, 1994))) Salzmann involved a scandalous allegation – that the defendant brokers had stolen from their clients – easily refuted by the plaintiffs' account statements. See Salzmann, 1994 WL 191855, at *12-13. In any event, Salzmann does not persuade this Court to ignore the general rule that material extraneous to the pleadings is not considered on a motion to strike.

The record here demonstrates the wisdom of that rule. The declarations submitted to the Court demonstrate that there is a factual dispute between the parties as to whether Kosmides works for or has a professional association with Spring11. That issue cannot be resolved on the basis of the Amended Complaint, or on the basis of the declarations. It must await full discovery. "If it is later discovered that Plaintiffs failed to conduct a reasonable factual inquiry before filing the [Amended] Complaint, then [Defendant] may bring an appropriate motion for sanctions at that time." New York Dist. Council of Carpenters Pension Funds v. Forde, 939 F. Supp. 2d 268, 288 (S.D.N.Y. 2013). For now, however, this Court will not strike

portions of the Amended Complaint based on extraneous evidence more appropriately considered at summary judgment.

Defendant's motion to strike allegations related to Justin Kosmides will be denied.

## III. MOTION TO DISMISS COPYRIGHT INFRINGEMENT CLAIMS

Spring11 has moved to dismiss Plaintiffs' copyright infringement claims to the extent that they rely on Arbor's unauthorized transfer of log-in credentials to Spring11 employees. As discussed above, Plaintiffs assert that Arbor requested that Reis issue log-in credentials to, among others, Micah Springston, whom Plaintiffs assert was a Spring11 employee. (Am. Cmplt. (Dkt. No. 18) ¶¶ 75, 77) Springston allegedly accessed the Reis Database and downloaded seven Reis reports that contained copyrighted material. (Id. at ¶¶ 79, 98-100) Relying on Graham v. James, 144 F.3d 229 (2d Cir. 1998), Spring11 claims that – although Arbor may have breached its licensing contract with Reis by procuring the log-in data for Springston – Springston downloaded the seven Reis reports pursuant to Arbor's valid licensing agreement, and thus no copyright infringement took place. (Def. Br. (Dkt. No. 22) at 14-15)

In Graham, the Second Circuit found that the owner of a copyrighted computer program had no valid infringement claim against a licensee who had refused to pay the owner pursuant to the licensing agreement, removed the owner's name from the computer program, and continued to distribute the program. The copyright owner argued that the licensing agreement had become void once the licensee refused to pay the license fee and removed the owner's name from the computer program. The Second Circuit disagreed, however, finding that the licensee's

11

conduct breached a <u>covenant</u> of the licensing agreement, but not a <u>condition</u> of the agreement.

The license therefore survived the breach:

> "[I]f the [licensee's] improper conduct constitutes a breach of a covenant undertaken by the [licensee] . . . and if such covenant constitutes an enforceable contractual obligation, then the [licensor] will have a cause of action for breach of contract," not copyright infringement. 3 <u>Nimmer on Copyright</u>, § 10.15[A], at 10-120. However, "[i]f the nature of the licensee's violation consists of a failure to satisfy a condition to the license . . . , it follows that the rights depend[e]nt upon satisfaction of such condition have not been effectively licensed, and therefore, any use by the licensee is without authority from the licensor and may therefore, constitute an infringement of copyright." <u>Id.</u> at 10-121.

<u>Id.</u> at 236-37 (alterations in <u>Graham</u>).

Here, there is no dispute that Springston downloaded the Reis reports using

credentials issued in his name by Reis pursuant to a request from Arbor, a Reis licensee. (Am.

Cmplt. (Dkt. No. 18) at ¶¶ 75-76, 79)

New York law[3] governs the construction of the licensing agreement. <u>Graham</u>,

144 F.3d at 237. "Generally speaking, New York respects a presumption that terms of a contract

are covenants rather than conditions." <u>Id.</u> (citing <u>Grand Union Co. v. Cord Meyer Dev. Co.</u>, 761

F.2d 141, 147 (2d Cir. 1985)). Here, Reis has not rebutted this presumption.

Where courts have concluded that a contractual provision is a condition, the

contractual language found to constitute a condition has been "unmistakable." <u>Bank of New</u>

<u>York Mellon Trust Co., N.A. v. Morgan Stanley Mortg. Capital, Inc.</u>, 821 F.3d 297, 305 (2d Cir.

2016) ("Conditions precedent are not readily assumed. While specific, talismanic words are not

---

[3] Both sides cite to New York law throughout their briefing. (Def. Br. (Dkt. No. 22); Pltf. Br. (Dkt. No. 26)) Where "'[t]he parties' briefs assume that New York law controls, . . . such "implied consent . . . is sufficient to establish choice of law.""" <u>See</u> DeBlasio v. Merrill Lynch & Co., Inc., No. 07 Civ. 318(RJS), 2009 WL 2242605, at *19 n.14 (S.D.N.Y. July 27, 2009) (alteration in <u>DeBlasio</u>) (quoting Nat'l Utility Serv., Inc. v. Tiffany & Co., No. 07 Civ. 3345(RJS), 2009 WL 755292, at *6 n.6 (S.D.N.Y. Mar. 20, 2009) (citation omitted)). Accordingly, this Court will apply New York law.

required, [New York] law nevertheless demands that conditions precedent be "'expressed in
unmistakable language.'" (quoting Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co., 86
N.Y.2d 685, 691 (1995))); see also U.S. Naval Inst. v. Charter Comms., Inc., 936 F.2d 692, 695
(2d Cir. 1991) (clause specifying that paperback edition of book was to be published "not sooner
than October 1985" did not create a condition precedent); Spinelli v. Nat'l Football League, 96
F. Supp. 3d 81, 125-26 (S.D.N.Y. 2015) (contractual obligation to pay royalties made "[i]n
exchange for the license" was a covenant, not a condition); Tangorre v. Mako's, Inc., No.
01Civ.4430(BSJ)(DF), 2003 WL 470577, at *7 (S.D.N.Y. 2003) (clause stating that the
copyright holder will grant the right to use copyrighted photographs "[u]pon receipt of payment
in full" constitutes a condition).

    While the Amended Complaint includes a conclusory allegation that Reis's Terms
of Service are a "condition to accessing the Reis Database," the Terms of Service – fairly read –
merely delineate "acceptable" and "unacceptable" behavior under the licensing agreement. (Am.
Cmplt. (Dkt. No. 18) at ¶¶ 36-39 (Terms of Service prohibit transferring access to Reis Database,
and "acting 'in such a manner' as to deprive Reis of a 'loss of a potential sale or subscription'"))
Plaintiffs have not cited language that approaches the "unmistakable" standard set by the Second
Circuit. Bank of New York Mellon Trust Co., N.A., 821 F.3d at 305.

    Plaintiffs' argument that Spring11 is "responsible for its infringement of Reis's
copyrights," and that any alleged breach by Arbor is immaterial to Plaintiffs' copyright
infringement claim (Pltf. Br. (Dkt. No. 26) at 17-18), misses the point: because Springston
downloaded the Reis reports using credentials issued pursuant to a valid licensing agreement
(Arbor's), no infringement occurred. Acknowledging (1) the provision in Arbor's licensing
agreement limiting Arbor's use of the Reis Database to Arbor employees, and (2) that Arbor may

13

have breached the licensing agreement when it sought and obtained access to the Reis Database for Springston, the access limitation was merely a covenant giving rise to a breach of contract claim, not a condition invalidating the license pursuant to which Springston accessed the Reis Database.

Plaintiffs argue that Springston's use of the Reis Database was not covered by Arbor's license, because the scope of the license is restricted to Arbor employees. (Pltf. Br. (Dkt. No. 26) at 18-19)  The Reis Terms of Service (which are attached to the subscriber agreement) prohibit users from "resell[ing] or transfer[ring] . . . use of or access to" the Reis Database. (Am. Cmplt. (Dkt. No. 18) at ¶¶ 36-37)  The Terms of Service also prohibit users from acting "in such a manner" so as to cause Reis the "loss of a potential sale or subscription." (Id. at ¶ 39)  Relying on Gilliam v. American Broadcasting Companies, Inc., 538 F.2d 14 (2d Cir. 1976), Plaintiffs argue that these provisions are "scope restrictions on licensees such as Arbor," and that they constitute "'conditions' limiting the activities that are licensed in the first place." (Pltf. Br. (Dkt. No. 26) at 18-19 (citing Gilliam, 538 F.2d 14)

In Gilliam, the Second Circuit held that "a grantor may not convey greater rights than it owns," and therefore a licensee's grant of permission to air an edited television episode to a sublicensee, when the licensee did not have permission to edit the episode, is "a nullity." Gilliam, 538 F.2d at 21.  Gilliam is inapposite, however, because Arbor did not attempt to grant a sublicense to Springston (or to Spring11) beyond the scope of the license it had obtained from Reis.  The "activities" addressed in the license Arbor obtained from Reis are precisely the activities in which Springston engaged: logging in to the Reis Database and downloading or viewing reports.  Accordingly, Arbor did not "convey greater rights than it own[ed]" to Springston or Spring11.  Arbor may have breached its licensing agreement by procuring log-in

14

credentials for Springston and other Spring11 employees, but Springston's download of Reis reports was performed pursuant to a valid (if breached) licensing agreement, and in downloading the Reis reports Springston did not infringe Reis's copyright. Only if the prohibition against allowing non-employees access to the Reis Database was a condition of the licensing agreement can Reis bring a copyright infringement claim for downloads performed pursuant to Arbor's license. Here, Plaintiffs have not rebutted the presumption under New York law that the provisions at issue are covenants rather than conditions.

As to Plaintiffs' other infringement claims, "'[n]either contributory nor vicarious copyright infringement can exist without an underlying finding of direct infringement.'" Reis, Inc. et al. v. Lennar Corp. et al., 15 Civ. 7905 (GBD), 2016 WL 3702736, at *4 (S.D.N.Y. July 5, 2016) (quoting Alexander v. Murdoch, No. 10 CIV. 5613(PAC)(JCF), 2011 WL 2802899, at *17 (S.D.N.Y. May 27, 2011)).

Plaintiffs' copyright infringement claims will be dismissed to the extent that they rely on Arbor's unauthorized transfer of log-in credentials to Spring11 employees.

## IV.   MOTION TO DISMISS COMPUTER FRAUD AND ABUSE ACT CLAIM

### A.   Applicable Law

The CFAA imposes criminal penalties on individuals who access computer systems without proper authorization. See 18 U.S.C. § 1030. The statute also includes a private right of action to bring a civil claim if certain requirements are met:

> Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (IV), or (V) of subsection (c)(4)(A)(i). Damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages.

15

18 U.S.C. § 1030(g).

Here, Plaintiffs allege that Spring11's conduct implicates subsection (c)(4)(A)(i)(I): a "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I). "To state a claim for loss in excess of $5,000, Plaintiff[s] must plead that Defendant: (1) accessed a 'protected computer'; (2) 'without any authorization or exceeding its authorized access'; and (3) caused 'loss' in excess of $5,000." LivePerson, Inc. v. 24/7 Customer, Inc., 83 F. Supp. 3d 501, 511 (S.D.N.Y. 2015). Spring 11 argues that Plaintiffs have not demonstrated that Plaintiffs suffered a "loss" of more than $5000 as a result of Spring11's conduct.

The CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). "The weight of caselaw [in this Circuit] holds that a Plaintiff can satisfy the CFAA § 1030(g) 'damage or loss' requirement by pleading a loss stemming from a damage assessment and/or remedial measures, even without pleading actual damage." Ipreo Holdings LLC v. Thomson Reuters Corp., No. 09 CV. 8099 BSJ, 2011 WL 855872, at *7 (S.D.N.Y. Mar. 8, 2011) (citing Univ. Sports Pub. Co. v. Playmakers Media Co., 725 F. Supp. 2d 378, 387 (S.D.N.Y. 2010); Kaufman v. Nest Seekers, LLC, No. 05 Civ. 6782(GBD), 2006 WL 2807177, at *8 (S.D.N.Y. Sept. 26, 2006)).

For example, "if the alleged loss seeks to 'identify evidence of [a] breach [of computer security], assess any damage it may have caused, and determine whether any remedial measures were needed to resecure the network,' then it qualifies as a 'loss' pursuant to the

16

CFAA." Millennium TGA, Inc. v. Leon, No. 12 Civ. 1360 (MKB), 2013 WL 5719079, at *16

(E.D.N.Y. Oct. 18, 2013) (quoting Univ. Sports Pub. Co., 725 F. Supp. 2d at 388). On the other

hand, "courts are reluctant to allow losses stemming from prophylactic preventative measures to

constitute 'losses' under the statute, even if such measure is prompted by a specific [breach] at

issue in a litigation." Id. (citing Univ. Sports Pub. Co., 725 F. Supp. 2d at 388).

## B.    Analysis

Plaintiffs assert that Spring11 violated the CFAA by accessing the Reis Database

without authorization, and that Reis suffered a loss "in expending time, money and resources

(aggregating at least $5,000 in a one year period) to conduct an investigation into the intrusion

and a damages assessment." (Am. Cmplt. (Dkt. No. 18) at ¶¶ 142-43) More specifically,

Plaintiffs contend that they expended $76,364 in developing proprietary software as part of the

"on-going investigation of Spring11's surreptitious access and use of the Reis Database," and

lost Reis employee time equivalent to $4,900 per month in 2014 and 2015 in conducting this

investigation.[4] (Pltf. Opp. (Dkt. No. 26) at 22; Am. Cmplt. (Dkt. No. 18) at ¶¶ 145, 150)

Plaintiffs do not allege that they conducted an investigation into "damage" to

Reis's computer systems, however. Nor do they allege that "remedial measures" were necessary

to address damage to those systems. Because Spring11 used the Reis Database in exactly the

same manner that an authorized user would – by accessing the database via an official username

and password – Plaintiffs' investigation focused not on damage to Reis's systems, but rather on

---

[4] In the Amended Complaint, Reis also claims "economic damages" of $515,000, representing
the retail value of the Reis reports that Spring11 downloaded. (Am. Cmplt. (Dkt. No. 18) at
¶ 159) These alleged losses are not recoverable under the CFAA. Under the CFAA, "revenue
lost" qualifies as a "loss" only if it was caused by an "interruption of service." 18 U.S.C. §
1030(e)(11). Here, Plaintiffs do not allege any interruption of service. Accordingly, Plaintiffs
cannot recover for lost revenue under their CFAA claim. See Reis, Inc. et al, 2016 WL 3702736,
at *5 ("Plaintiffs' 'lost retail value' of about $1,629,948, from downloaded reports is not a loss
covered by the CFAA,").

"identif[ing] . . . user[s] and determin[ing] whether [they were] acting pursuant to a duly issued license either by way of a Reis Subscriber Agreement or as a registered user paying for reports as they are accessed and downloaded from Reis.com." (Id. at ¶ 144)  In sum, Plaintiffs' costs stem from their efforts to identify those who had obtained unauthorized access to the Reis Database, and not from any effort to investigate damage done to Reis computer systems or the Reis Database.

Plaintiffs contend that the unauthorized accessing of the Reis Database – standing alone – constitutes a "loss" that causes "damage."  Under the CFAA, however, "[c]ourts 'award[] costs of "investigating and repairing the damage," which involves only assessing the damage to the system.'"  Costs associated with "'locating and collecting information about the hacker'" are not recoverable under the CFAA.  Millenium TGA, 2013 WL 5719079, at *18 (quoting Tyco Int'l (US) Inc. v. John Does, 1-3, No. 01 Civ. 3856(RCC)(DF), 2003 WL 23374767, at *3 (S.D.N.Y. Aug. 29, 2003)).

Relying on T-Mobile USA, Inc. v. Terry, 862 F. Supp. 2d 1121 (W.D. Wash. 2012), Plaintiffs further contend that costs associated with investigating possible impairment to their system satisfy the CFAA's "loss" requirement.  (Pltf. Br. (Dkt. No. 26) at 21)  In T-Mobile, the court granted plaintiff summary judgment on its CFAA claim where the defendant had accessed a T-Mobile computer system to activate bulk quantities of SIM cards, and then used his access to T-Mobile's computer system to equip those SIM cards with stolen mobile airtime and other services.  T-Mobile USA, 862 F. Supp. 2d at 1130.  The court found that T-Mobile had spent more than $5,000 "investigating and assessing the possible impairment to the integrity of its proprietary computer system and wireless network, conducting a damage assessment

18

regarding Defendant's collection and dissemination of dealer codes, SIM cards, and wireless airtime, and tracking down and deactivating improperly-activated SIM cards." Id. at 1131.

Here, however, all of Plaintiffs' costs were associated with identifying Spring11 and other alleged unauthorized users. Plaintiffs have not pled facts demonstrating that they incurred costs in investigating damage done to their computer systems.

Because Plaintiffs have not pled facts sufficient to satisfy the $5,000 loss requirement for a civil claim under the CFAA, this claim will be dismissed.

## V.    **MOTION TO DISMISS STATE LAW CLAIMS**

### A.    **Conversion**

Under New York law, "[c]onversion is the 'unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'" State of New York v. Seventh Regiment Fund, 98 N.Y.2d 249, 259 (2002) (quoting Vigilant Ins. Co. of Am. v. Hous. Auth. of City of El Paso, Tex., 87 N.Y.2d 36, 43 (1995)). "'An essential element of conversion is the "unauthorized dominion" to the exclusion of the right of the plaintiff.'" Obeid v. Mack, No. 14CV6498-LTS-HBP, 2016 WL 1069678, at *4 (S.D.N.Y. Mar. 17, 2016) (quoting Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, 813 F. Supp. 2d 489, 536 (S.D.N.Y. 2011)).

Although digital files can be the subject of conversion claims, Thyroff v. Nationwide Mutual Insurance Co., 8 N.Y.3d 283, 291-92 (2007), New York courts distinguish between a file that has been copied and one that has been converted. Pure Power Boot Camp, Inc., 813 F. Supp. 2d at 536 (defendant allegedly downloaded business documents, including a client list, from plaintiff's computer onto a thumb drive; because defendant "possessed only a

19

copy of the client list and did not, in any way, limit or otherwise deprive [plaintiff] of possession or use of that list," plaintiff had no conversion claim).

Spring11's download of the Reis Reports does not qualify as "conversion" because – as with the client lists at issue in Pure Power Boot Camp, Inc. – Spring11's action did not deprive Plaintiffs of their ability to access or create copies of the Reis Reports. Id.

The cases cited by Plaintiffs (Pltf. Br. (Dkt. No. 26) at 24-25) are not to the contrary, because they all involve plaintiffs who lost access to data or other property, and were therefore "excluded" from or deprived of their property. See Harris v. Coleman, 863 F. Supp. 2d 336, 339, 344-45 (S.D.N.Y. 2012) (denying motion to dismiss conversion claim predicated on allegation that counterclaim-defendant had "fabricated two legal documents purporting to assign or transfer the [counter-claim plaintiffs'] intellectual property rights"); Thyroff, 8 N.Y.3d at 285, 291-92 (conversion claim permitted to proceed where plaintiff's leased computer had been repossessed and he was unable to retrieve personal and customer information from the computer).[5]

While New York courts have recognized that conversion can be predicated on the loss of intangible electronic data, that case law has not "alter[ed] the traditional rule requiring 'the exercise of unauthorized dominion and control to the complete exclusion of the rightful possessor.'" Geo Group, Inc. v. Community First Services, No. 11-cv-1711 (CBA), 2012 WL 1077846, at *9 (E.D.N.Y. 2012) (quoting Harper & Row, Publishers, Inc. v. Nation Enter., 723 F.2d 195, 201 (2d Cir. 1983), rev'd on other grounds, 471 U.S. 539 (1985)).

---

[5] Volodarsky v. Moonlight Ambulette Serv., Inc., 122 A.D.3d 619, 620 (2d Dept. 2014), also cited by Plaintiffs, sheds no light here, because the court does not address whether plaintiff was deprived of the electronically stored documents at issue.

Although Plaintiffs allege that "Spring11 consumed [the Reis] reports, used them, and could not return them to Reis," (see Am. Cmplt. (Dkt. No. 18) at ¶ 166), this is empty rhetoric. Spring11's use of Reis reports did not in any way deprive Plaintiffs of their ability to access and use their own reports. See Dauphin v. Crownbrook ACC LLC, No. 12-CV-2100 (ARR)(SMG), 2014 WL 2002822, at *11 (E.D.N.Y. May 15, 2014) (granting summary judgment for plaintiff on conversion counterclaims where "the counterclaims assert that plaintiff made a copy of the files for himself and used the files at his new job"; "such copying and use would not deprive defendant of the use of the files").

Finally, Plaintiffs argue that their conversion claim should survive because their reports have "commercial retail value." (Pltf. Br. (Dkt. No. 26) at 25) Plaintiffs cite no law for the proposition that the exclusion element of a conversion claim is excused where the allegedly converted property has "commercial retail value."

Plaintiffs' conversion claim will be dismissed.

## B.      Misappropriation/Unfair Competition

Plaintiffs allege that Spring11 misappropriated and used "for its benefit" Reis reports that were "valuable, novel, and original compilations of data used by Reis in its business." (Am. Cmplt. (Dkt. No. 18) at ¶ 176) In opposing Defendant's motion to dismiss, Plaintiffs explain that their misappropriation claim should be construed as an unfair competition claim. (Pltf. Br. (Dkt. No. 26) at 28-29)

"'[T]he primary concern in unfair competition is the protection of a business from another's misappropriation of the business' "organization [or its] expenditure of labor, skill, and money."'" Macy's Inc. v. Martha Stewart Living Omnimedia, Inc., 127 A.D.3d 48, 56 (1st Dept. 2015) (quoting Ruder & Finn v. Seaboard Sur. Co., 52 N.Y.2d 663, 671 (1981)). "'[T]he

principle of misappropriation of another's commercial advantage [is] a cornerstone of the tort.'" Id. (quoting Ruder & Finn, 52 N.Y.2d at 671). While "'actual competition between the parties is no longer a prerequisite' to sustaining an unfair competition claim," a plaintiff must show "[s]ome 'competitive injury,'" such as "'a direct financial loss, lost dealings, or lost profits resulting from the anticompetitive acts at issue or, at the very least, that defendant diverted plaintiff's customers and business to defendant.'" Flo and Eddie, Inc. v. Sirius XM Radio, Inc., 62 F. Supp. 3d 325, 349 (S.D.N.Y. 2014). "Although the law of unfair competition has been broadly construed to provide protection 'from any form of commercial immorality,' '[t]he tort is not all-encompassing.'" Yantha v. Omni Childhood Center, Inc., No. 13-CV-1948 (ARR)(JMA), 2013 WL 5327516, at *7 (E.D.N.Y. Sept. 20, 2013) (internal citations omitted). Where an unfair competition claim is not supported by facts demonstrating a "clear competitive injury," the claim must be dismissed. Yantha, 2013 WL 5327516, at *7-8.

Here, the Amended Complaint does not allege that Plaintiffs have suffered any competitive injury as a result of Spring11's conduct. While Plaintiffs contend that Spring11 "improperly accessed and used the [Reis] reports for its benefit[,]" (Am. Cmplt. (Dkt. No. 18) at ¶¶ 177, 179), Plaintiffs have not alleged that Spring11 used the reports to divert business from Reis. Because Plaintiffs have not pled facts demonstrating that they suffered a competitive injury as a result of Spring11's conduct, their misappropriation/unfair competition claim will be dismissed.

## C. Fraud

Plaintiffs allege that Spring11 made a fraudulent statement "[e]ach time" a Spring11 employee accessed the Reis Database, because Spring11 thereby "represented to Reis that its users were employees of legitimate licensees who were logging on to the Reis Database

pursuant to the licenses held by those entities. . . ." (Am. Cmplt. (Dkt. No. 18) at ¶ 186) Spring11 argues that this "implied" statement does not qualify as a fraudulent representation. (Def. Br. (Dkt. No. 22) at 24-26)

It is unnecessary to resolve this dispute between the parties, because out-of-pocket losses are a required element in pleading a fraud claim under New York law, and Plaintiffs have pled only lost profits.

"Under New York law, a plaintiff must have suffered damages in order to have a recognizable fraud claim." Semerdjian v. McDougal Littell, No. 07 Civ. 7496(LMM), 2008 WL 110942, at *2 (S.D.N.Y. Jan. 2, 2008). "New York law awards only 'out-of-pocket' expenses in fraud cases, entitling plaintiffs to damages solely for their actual pecuniary losses. Those losses must be the direct, immediate, and proximate result of the misrepresentation. The damages must also be independent of other causes." Kregos v. Associated Press, 3 F.3d 656, 665 (2d Cir. 1993) (internal citations omitted); see also Cayuga Harvesteer v. Allis-Chalmers Corp., 95 A.D.2d 5, 22 (4th Dept. 1983) ("There is no question that in New York damages for fraud are limited to indemnity for the actual loss sustained and that loss of the benefit of the bargain as represented by the wrongdoer is not recoverable." (footnote omitted)). Lost profits are not recoverable on a fraud claim. Cont'l Cas. Co. v. PricewaterhouseCoopers, LLP, 15 N.Y.3d 264, 271 (2010) ("The damages [in a fraud action] are to compensate plaintiffs for what they lost because of the fraud, not for what they might have gained."); Route 217, LLC v. Greer, 119 A.D.3d 1018, 1019 (3d Dept. 2014) ("Even assuming these allegations are sufficient to sustain a fraud cause of action, we nonetheless note that plaintiff seeks only lost profits as its damages and, therefore, cannot succeed on this cause of action." (internal citations omitted)).

Here, Plaintiffs allege that they have suffered damages of "not less than" $515,000. This damage claim is based on the value of the reports that Spring11 employees allegedly downloaded. (Am. Cmplt. (Dkt. No. 18) at ¶¶ 192-93) The "value" of a downloaded Reis report is <u>only</u> a "loss" insofar as it represents a lost profit, however, and "[u]nder the out-of-pocket rule, there can be no recovery of profits which would have been realized in the absence of fraud." <u>Lama Holding Co. v. Smith Barney,</u> 88 N.Y.2d 413, 421 (1996) (citing <u>Foster v Di Paolo,</u> 236 N.Y. 132, 134 (1923); <u>AFA Protective Sys. v Am. Tel. & Tel. Co.,</u> 57 N.Y.2d 912, 914 (1982)).

Plaintiffs' fraud claim will be dismissed.

## D.   **Breach of Contract**

Plaintiffs allege that Spring11 violated the Terms of Service that are listed on the Reis website. According to Plaintiffs, the Terms of Service apply to every user of the Reis Database, and require that all users pay the fees associated with downloading Reis reports. (Am. Cmplt. (Dkt. No. 18) at ¶ 196) Although visitors to the Reis website are not required to take any affirmative action to agree to the Terms of Service, they may be accessed by clicking on a hyperlink found on Reis's home page under the heading "LEGAL." (<u>Id.</u> at ¶¶ 41, 197) Because Reis does not allege that visitors to its website are required to agree to the Terms of Service to use the site, or that they are required to click on available link to view the contract terms at all, the Terms of Service are what is known as a "browsewrap" agreement. <u>See Hines v. Overstock.com, Inc.,</u> 668 F. Supp. 2d 362, 366 (E.D.N.Y. 2009) (defining "browsewrap" agreements).

Whether Spring11 is contractually bound by the Terms of Service depends whether Spring11's employees had "'actual or constructive knowledge of the site's terms and

conditions, and [] manifested assent to them.'" Fteja v. Facebook, Inc., 841 F. Supp. 2d 829, 836 (S.D.N.Y. 2012) (quoting Cvent, Inc. v. Eventbrite, Inc., 739 F. Supp. 2d 927, 937-38 (E.D.Va. 2010)). Spring11 argues that Plaintiffs have failed to adequately allege that it was or should have been on notice of the "hyperlink buried at that bottom of the login webpage[,]" and therefore it did not assent to the Terms of Service. (Def. Br. (Dkt. No. 22) at 20) Plaintiffs argue that Spring11, as a corporate website user, has constructive knowledge of the site's terms, and that, in any event, Spring11 had actual knowledge of those terms. (Pltf. Br. (Dkt. No. 26) at 23)

This Court need not resolve the question of whether Spring11 had constructive knowledge of the Terms of Service, because the Amended Complaint pleads facts suggesting that Spring11 had actual knowledge that it was violating the Reis Terms of Service.

A motion to dismiss a breach of contract claim predicated on a browsewrap agreement may be denied where the defendant's conduct indicates that it was aware that it was violating service terms. See AvePoint, Inc. v. Power Tools, Inc., 981 F. Supp. 2d 496, 511 (W.D. Va. 2013) (denying motion to dismiss breach of contract claim based on a browsewrap agreement where defendant "went to the trouble of creating a fictitious profile and email account in order to download the software"; such actions "suggest[] that [defendant] had knowledge of the Terms and Conditions, and was aware that they prohibit users from downloading materials for commercial use").

Here, the Amended Complaint alleges that Spring11 sought log-in credentials for its employees from Arbor, and instructed Arbor to provide Reis with Arbor email addresses, rather than Spring11 email addresses. (Am. Cmplt. (Dkt. No. 18) at ¶ 78) The Amended Complaint further alleges that Spring11 sometimes used a masked IP address when it accessed the Reis Database. (Id. at ¶¶ 59-62) Plaintiffs also claim that Spring11 continued to violate the

25

Terms of Service and download Reis Reports even after the instant action was initiated. (Id. at ¶¶ 75, 78, 80, 88, 97) At this stage of the proceedings, these allegations are sufficient to demonstrate that Spring11 had actual knowledge of the Reis Terms of Service.

   Defendant's motion to dismiss Plaintiffs' breach of contract claim will be denied.

### E. Unjust Enrichment and Quantum Meruit

   Plaintiffs bring claims for unjust enrichment and quantum meruit to recover the value of the reports that Spring11 downloaded from the Reis Database. (Id. at ¶¶ 205, 210-211) "Applying New York law, [this Court] may analyze quantum meruit and unjust enrichment together as a single quasi contract claim." Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005).

   Spring11 contends that Plaintiffs' "quasi-contract" claims must be dismissed because (1) there is a valid contract between Reis and its subscribers that addresses the use of Reis reports, and (2) there is not a sufficiently close relationship between Reis and Spring11 to justify quasi-contract claims. (Def. Br. (Dkt. No. 22) at 30-31)

#### 1. Existence of a Contract

   "'To state a claim for unjust enrichment under New York law, a plaintiff must allege that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover.' However, the existence of a valid, written agreement precludes recovery for unjust enrichment for events arising out of the same subject matter." Howe v. Bank of New York Mellon, 783 F. Supp. 2d 466, 485 (S.D.N.Y. 2011) (internal citations omitted) (quoting Briarpatch, Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 306 (2d Cir.2004)).

26

"In order to recover in quantum meruit under New York law, a claimant must establish '(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services.'" Mid-Hudson Catskill Rural Migrant Ministry, Inc., 418 F.3d at 175 (quoting Revson v. Cinque & Cinque, P.C., 221 F.3d 59, 69 (2d Cir. 2000)). "New York law does not permit recovery in quantum meruit, however, if the parties have a valid, enforceable contract that governs the same subject matter as the quantum meruit claim." Id.; see also Melcher v. Apollo Medical Fund Management LLC, 105 A.D.3d 15, 28 (1st Dept. 2013) ("'[T]here can be no quasi-contract claim against a third-party non-signatory to a contract that covers the subject matter of the claim.'" (quoting Randall's Island Aquatic Leisure, LLC v. City of New York, 92 A.D.3d 463, 464 (1st Dept. 2012))).

Quasi-contract claims may properly be pleaded in the alternative to a breach of contract claim, however, particularly where there is uncertainty as to whether an enforceable contract that governs the issue exists. Newman & Schwartz v. Asplundh Tree Expert Co., Inc., 102 F.3d 660, 663 (2d Cir. 1996); Gao v. JP Morgan Chase & Co., No. 14 Civ. 4281(PAC), 2015 WL 3606308, at *5 (S.D.N.Y. June 9, 2015) ("[I]f the validity or enforceability of a contract is in doubt or uncertain, claims of unjust enrichment may survive a motion to dismiss." (internal quotation marks omitted)).

Here, there is uncertainty as to whether the Reis Terms of Service create an enforceable contract between Reis and Spring11. Accordingly, dismissal of Plaintiffs' quasi-contract claims would not be appropriate on the ground that there is a valid contract between the parties.

27

## 2.   **Insufficiently Close Relationship**

Relying on <u>Georgia Malone & Co. v. Rieder</u>, 19 N.Y.3d 511, 516 (2012),

Spring11 argues that Plaintiffs' quasi-contract claims must be dismissed, because the relationship

between Spring11 and Reis is too attenuated to support such claims. (Def. Br. (Dkt. No. 22) at

31)

In <u>Georgia Malone</u>, plaintiff – a real estate brokerage firm – prepared due

diligence reports for a developer in connection with the potential purchase of commercial

properties. Plaintiff sued a rival brokerage firm for unjust enrichment after that firm acquired

plaintiff's reports from the developer, and later obtained a commission on the sale of the

commercial properties. In rejecting plaintiff's unjust enrichment claim, the New York Court of

Appeals found that the relationship between the two brokerage firms was too attenuated to

support such a claim, despite the fact that defendant was aware that plaintiff had created the

reports: "mere knowledge that another entity created the documents is insufficient to support a

claim for unjust enrichment under the facts of this case." <u>Georgia Malone</u>, 19 N.Y.2d at 517.

The two brokerage firms "simply had no dealings with each other." <u>Id.</u> at 517-18.

<u>Georgia Malone</u> would be analogous here if Reis subscribers had passed along to

Spring11 Reis reports that they had downloaded through their subscription to the Reis Database.

But Plaintiffs have alleged more – a direct link between the two companies. Plaintiffs claim that

Spring11 directly accessed the Reis Database and downloaded reports. This is sufficient to

distinguish <u>Georgia Malone</u>.

Defendant's motion to dismiss Plaintiffs' quasi-contract claims will be denied.

## CONCLUSION

For the reasons stated above, Defendant's motion to strike is denied. Defendant's

motion to dismiss is granted as to the Amended Complaint's claims for (1) copyright

infringement, to the extent those claims are based on Springston's downloads using Arbor

credentials; (2) violation of the Computer Fraud and Abuse Act; (3) conversion; (4)

misappropriation/unfair competition; and (5) fraud. Defendant's motion to dismiss is otherwise

denied. The Clerk of the Court is directed to terminate the motion (Dkt. No. 21).

Dated: New York, New York
September 24, 2016

SO ORDERED.

Paul G. Gardephe
United States District Judge